UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,                       Case No. 12-20607
                                          Honorable Thomas L. Ludington
v.

ROBERT J. POCHMARA – D1
MAXINE C. POCHMARA – D2
GARY L. WILSON – D3
SUE A. WILSON – D4

         Defendants.

_____/

**ORDER SUMMARIZING ADVISORY GUIDELINES CONCLUSIONS**

On October 10, 2013, the Court entered an order directing supplemental briefing to address various objections the Defendants raised concerning the Advisory Guidelines ranges contained in their Presentence Investigation Reports (PSR). Those PSRs reflected the following Advisory Guidelines ranges for the Defendants:

| Defendant | Adjusted Offense Level | Criminal History Score | Advisory Guidelines Range |
|---|---|---|---|
| Robert Pochmara | 20 | I | 33-41 months |
| Maxine Pochmara | 20 | I | 33-41 months |
| Gary Wilson | 18 | I | 27-33 months |
| Sue Wilson | 18 | I | 27-33 months |

The Defendants filed their supplemental papers and the Court entertained argument and evidence at a hearing on December 9, 2013. This opinion is intended to briefly summarize the conclusions reached during the hearing, as well as to help prepare for the sentencing hearing

scheduled for January 28, 2014. During that December 9 hearing the Court reached the following conclusions:

## 1. Robert and Maxine Pochmara

First, the evidence confirmed that the PSRs appropriately assigned each of the Pochmaras a two-level increase for their role in the offense as organizers and leaders pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(c).

The Court was equally satisfied that the Pochmaras' remarriage shortly after being apprised of the charges against them in this case was intended to manufacture a spousal privilege, however futile the attempt may have been. In addition, their post-conviction efforts to secure letters from family members to substantiate the legitimacy of the remarriage were equally incredible. The chronology of events—the date of the remarriage and the date the charges became public—did not square with counsel's arguments that the remarriage was to "protect the grandchildren" from ridicule. Moreover, the Pochmaras elected against testifying in support of their position.

Finally, the government contended that the Pochmaras received Railroad retirement benefits—even after Mr. Pochmara left the Wilsons' NAPA autoparts store—in excess of $400,000. The Court, however, concluded that the amount of loss should be scored at less than $400,000 because the proofs at that juncture were incomplete and therefore not convincing by a preponderance of the evidence. In addition, there was no dispute that, medically, Mr. Pochmara continued to have a disability, likely entitling him to some benefit in any event.

Accordingly, the Advisory Guidelines scoring for the Pochmaras remains as recommended by the PSR at 33 to 41 months.

### 2.  Gary and Sue Wilson

As with the Pochmaras, Court concluded that the PSRs appropriately scored the Wilsons for their role in the offense and the amount of loss.  However, an additional two-level increase for obstruction of justice was found to be supported by the Wilsons' effort to misrepresent their financial circumstances.  Among a number of questionable entries, the Wilsons reported that their NAPA autoparts store had an asset value of $60,000, subject to a business loan of $142,113.75 (for an estimated net market value of negative $82,113.75).

But in April 2009, Mr. Wilson represented to a bank from which he was seeking a loan that the value of the business was in excess of $436,000:

> Q:      Mr. Wilson, in the mortgage application that you did in, I believe, April of 2009, you indicated that your net worth of your business was $436,000— excuse me, $436,115.32.
>
> A:      Is that a resale value, a net value, appraised value?  What kind of value was it?
>
> Q:      You filled it out.  I did not.  Is that number—
>
> A:      That isn't my writing.  I didn't fill that out but—
>
> Q:      Did you sign it?
>
> A:      I don't—
>
> Q:      I'm referring to Government's Exhibit A.
>
> A:      That's my signature, yes.

Then, when questioned about his preparation for the Probation Office disclosures that do not indicate a positive net value of the company, Wilson explained as follows:

> Q:      This is the one you did for the probation office, correct?
>
> A:      Okay.

Q:        Also did a probation form 48D, declaration of defendant or offender, net worth and cash flow statements. You filled that out and signed it, correct?

A:        Correct.

Q:        And you signed that in May of 2013.

A:        Ah, correct.

Q:        And you understood you were required to tell the truth on the financial statement, correct?

A:        Yes.

Q:        All right. And is this the financial statement you filled out?

A:        This financial statement does not have the business side of it. The business side—if I had the numbers here that showed how much I owed and how much was on accounts receivable, if I was an accountant, I could probable help you. I don't know.

Q:        Well, let me help you, sir. Let me help you.

A:        Thank you.

Q:        I would like to refer to the page where you list liabilities. It says, other debts, you list your inventory owed, correct?

A:        $229,612, that's correct.

Q:        What are you looking at? I'm sorry.

A:        $142,113, right there.

Q:        All right. So you listed the liability. Where is the asset side?

A:        What number are you trying to get to here?

Q:        I'm asking you, on your form, where did you disclose the value of the business? It has a value, doesn't it?

A:        It's only worth what I owe the bank, $142,000. If I renig on this loan, you know how much my inventory is worth on the dollar? Do you?

Q:        No, I'm asking—

A:      I'm going to tell you.  My inventory is worth 25 cents on the dollar if I
        close my doors right now.  And if you think I'm lying, call NAPA in
        Detroit and ask them.  I have no value—it might be $425.  It might be a
        million dollars.  IT's only what people will give the money for it.  I don't
        know what you're looking for.  I don't understand your answer.  I'm not
        an accountant.

Q:      I know you're not an accountant but when you filled out your mortgage
        application, did you take your accountant with you?

A:      No.

Q:      So when you filled out the mortgage application, you were able to assess a
        value of $436,000 to your business.  Where is anything like that reflected
        in your financial statement, sir?  Take a look at it.

A:      Maybe it's at the bank.  Maybe I told at the bank my business is worth half
        a mil so I can get my percentage down to three percent that I have to pay it
        back.  It's all about borrowing money.  That value is not a—it's only
        worth the person who wants to buy my property.  If you want to give me
        $400,000, Janet, for my business, I will sell it to you but I will tell you
        what, it's only worth $142,000.  If I go to that bank and tell that bank that
        the business is worth $600,000, I believe it is because somewhere down
        the line, that bank is going to be—that business will be worth $600,000.  I
        believe that.  I'm a hard worker.  I make money.

                *       *       *       *       *

Q:      Yeah.  I'm going to ask you again, if you listed the liability of the
        business, where did you list the value of the business?

A:      I don't know, Janet.  I don't know.  I can't answer that question.

Q:      Do you agree with me that you did not?

A:      I'm not answering that question.  I'm sorry.

The increase for obstruction of justice on the point is warranted.

The Court also concluded that Gary Wilson should be assessed another two points for

obstruction of justice pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 because he

attempted to deter witnesses from testifying.  The Court had previously heard the testimony of

Steve Porter and Stanly Krajnik during the trial, which, to a large extent, was fully corroborated

by Gary Wilson's testimony during the evidentiary hearing:

> A:     I said, "Stan, I'm dropping these parts off for you."
>
> "Thank you, Gary. By the way, Gary, why did I get a subpoena to come to court on behalf of you?"
>
> I said, "I guess they want information from you, Stan."
>
> "What kind of information?"
>
> I said, "I don't know. Probably the same information that Jeff Hackett gave."
>
> He said, "well, Jeff Hackett told me all this information that I gave to him was on behalf of Robert Pochmara. Had nothing to do with you."
>
> I said, "Well, I don't know what to tell you, Stan." I said, "If that's what you were told, then you were told that."
>
> You know, there is things in life, it's how close are you to becoming a lie and how far is it in between that is really the actual truth. You know, this was—Stan says, "Well, what do I do?"
>
> "You take the stand. You know, you've got to." I said, "But remember one thing, Stan. Don't get up there and tell any lies."
>
> "Why?"
>
> I said, "Because you will be in big trouble." I said, "For one thing, that's perjury. Now the government is going to come after you like they are coming after me. And second of all, *don't say anything bad about my company or myself*," I said, "Because it always opens the opportunities." And that's all I said.

Gary Wilson's counsel disputes the application of another two-point enhancement for

these acts of obstruction: Gary's statements to Stanly Krajnik, described above, and his similar

statements to Steve Porter. Counsel contends that *Fields v. United States*, 963 F.2d 105 (6th Cir.

1992), and *United States v. Vaught*, 133 F. App'x 229 (6th Cir. 2005), support his point that a

two-level increase for obstruction can only be applied once. But counsel is mistaken.

Indeed, in *Fields*, the Sixth Circuit established in dicta that it was "unable to find any authority to support the aggregation of obstruction points simply because the defendant committed more than one act of obstruction in a single case." *Fields*, 963 F.2d at 109.  But over ten years later, the Sixth Circuit recognized the point and abandoned it in *Vaught*: "We noted (in dicta) in *Fields v. United States* the absence of any authority to support the aggregation of obstruction points when a defendant commits multiple acts of obstruction.  *However, in subsequent cases other circuits have held that such an aggregation is allowed under the Guildelines*."  *Vaught*, 133 F. App'x at 235 (emphasis added) (affirming district court's four-level increase for obstruction of justice).

As in *Vaught*, the evidence demonstrated that Gary Wilson attempted to dissuade both Stanly Krajnik and Steve Porter from testifying against him.  An additional two-level increase, based on these discrete incidents of obstruction, is appropriate.

Accordingly, as a result of these increases, Sue Wilson's Advisory Guidelines range is now 33 to 41 months, and Gary Wilson's range is elevated to 51 to 63 months.

Dated: January 24, 2014                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 24, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>